Williamson v. Russell.

———•———

JOHN WILLIAMSON, Respondent, v. FRANCIS T. RUSSELL, Appellant.

1. *War, usages of — Seizure of property — Article XI, section 4, effect of.*—The seizure and sale of property by military officers does not pass title, unless such seizure is warranted by the usages of war; but section 4, article XI, of the State constitution is valid for the purpose of protecting such officers from prosecutions for unlawful seizures made during the late rebellion.

*Appeal from Boone Circuit Court.*

*O. Guitar*, for appellant.

*L. W. Robinson*, for respondent.

BLISS, Judge, delivered the opinion of the court.

The plaintiff sues for the conversion of a pocket-book and contents, and it appears from the pleadings and evidence that defendant, in the spring of 1864, was assistant provost marshal

Williamson v. Russell.

of the State, with his office at Columbia; that the country was infested with bushwhackers at the time, and that plaintiff was arrested about two miles from town by a squad of soldiers, and brought before him to be disposed of as a prisoner. Upon examination the prisoner claimed that he was in Boone county on a visit to his brother, and that he had taken no part in the war, but admitted that he had been fired at and chased in Davies county, his residence, by the State militia. On inquiry as to what he had upon his person, he gave up his pocket-book, which was examined by defendant and returned, and afterward was given back, and the defendant took out ten dollars and gave it to the prisoner, and gave him a parole to return in ten days, which parole contained a receipt for the money retained — $141. Here there is some discrepancy in the testimony. Both agree that the plaintiff was not in good health at the time, but plaintiff says that defendant told him to come back in ten days and prove his loyalty, and that he would keep his pocket-book until he found out who he was. Defendant testifies that he thought he was warranted in detaining him as a prisoner, but he was in poor health, there was no hospital, and he concluded to parole him to return within ten days with proof that he had not been in arms against the government, and proposed to hold the money as security for his return. The plaintiff at first objected to this, but finally consented, and took his parole. One Harris, who was in the office at the time, testifies that he counted the money, wrote the parole and receipt, and when it was handed to plaintiff he was told that the money was kept to insure his return, and when he came back with the proper proof it would be given up. The prisoner never came back. A special deposit of the wallet and money was made in Price's bank, the facts were reported to the provost marshal general of the State, and defendant offered to surrender to him the money, but was told to retain it, as the plaintiff might yet report himself. He kept it until relieved from duty, when he was ordered by the provost marshal of the district to deliver over to him the property in his hands, the order specially naming this money. Being then under his orders he obeyed, and paid it over in the August following its receipt.

The claim of the plaintiff is based upon the assumption that the action of defendant was malicious and for private and selfish ends; that the military authority under which he acted was but a pretense and cover; and upon that hypothesis the case was put to the jury, who gave him a verdict of $240, of which the plaintiff remitted a small sum, and a judgment was entered for the balance.

Saying nothing about the theory of the plaintiff's case, about the propriety of inquiring into the motives that prompted the ·action of the military courts, or of officers of mixed judicial and administrative functions, whose jurisdiction became a necessity during the war, there is nothing whatever in the record to support the instructions or the verdict.

The former should not have been given, or having been given, the verdict should have been set aside upon the motion which was filed by defendant. When a case arises where a military officer has made use of his position to rob for his own benefit, it will be time enough to consider the question of liability, notwithstanding he may have been acting under general orders. Nor is it necessary to say whether he was or was not justified in retaining the pocket-book. The court did not pass upon that question, but presented issues quite outside of the record. All the evidence shows that the defendant acted in the most perfect good faith; that he was actuated by no malice, and that he neither received nor sought to receive any personal benefit from the transaction. Instead, then, of giving an unfriendly jury an opportunity to render an unjust verdict, by supposing a state of facts that was unsupported by a single item of evidence, the court should have instructed the jury, under the facts proved, to find for defendant.

The object of one other instruction I do not clearly see. The jury were told that section 4 of article XI of the constitution did not divest the plaintiff of his right of property in the money and pocket-book. This may be true and still the defendant may not be personally liable. We have often held that the seizure and sale of property by military officers did not pass a title unless such seizure was warranted by the usages of war. But we have

also recognized the force and effect of said constitutional provision in protecting from prosecution those who may have been guilty of illegal seizures. (Drehman v. Stifel, 41 Mo. 184.) This instruction could only tend to mislead and prejudice the jury, even if true, as, without the constitutional provision, the right to damages would flow from the right of property.

The general statute of limitations was pleaded, but no instructions were given in regard to it, and the Federal statute referred to in The State, to use of Judge, v. Gatzweiler, *ante*, p. 17, seems to have been overlooked.

The judgment will be reversed and the cause remanded. Judge Adams concurs. Judge Wagner absent.